IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FLOOR AND DECOR OUTLETS OF AMERICA, INC. | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: _____ |
| v. | ) ) | |
| SAFETY NATIONAL CASUALTY CORPORATION | ) ) ) | |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Floor and Decor Outlets of America, Inc. files this complaint, alleging as follows:

1.

This is a complaint for breach of contract and declaratory judgment by Plaintiff Floor and Decor Outlets of America, Inc. ("F&D") against its insurer, Safety National Casualty Corporation ("Safety National").  F&D seeks, *inter alia*, damages for breach of contract and judicial declarations regarding Safety National's obligations under the insurance policies discussed herein, in connection with two lawsuits filed against F&D.  These underlying suits are brought by RVC

Floor and Decor ("RVC"), alleging among other things purported trademark infringement and unfair competition in violation of the common law and sections of the New York General Business Law.  F&D vigorously disputes such allegations, and brings this suit for breach of contract and to clarify its rights with respect to those underlying suits under insurance policies purchased from Safety National.

**PARTIES**

2.

Plaintiff F&D is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.  F&D is an indirect, wholly-owned subsidiary of Floor & Decor Holdings, Inc. ("FDO Holdings"), the named insured on many of the policies referenced in this Complaint.  As an indirect, wholly-owned subsidiary of FDO Holdings, F&D is an insured under the insurance policies referenced herein.

3.

Defendant Safety National is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at 1832 Schuetz Road, St. Louis, MO, 63146-4235.  Safety National is registered to do business in Georgia and transacts business in this jurisdiction by issuing insurance policies to

2

Georgia residents.  Safety National can be served with process through its

registered agent in Georgia: CT Corporation System, 289 S Culver St,

Lawrenceville, GA, 30046-4805.

## JURISDICTION

4.

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332,

2201 and 2202.  Complete diversity of citizenship exists between the parties, and

the amount in controversy is in excess of $75,000 (Seventy-Five Thousand Dollars

and no/100), exclusive of interest and costs.

## VENUE

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

## THE PRIMARY INSURANCE POLICIES

6.

Safety National issued a policy of insurance to FDO Holdings, which

identified Plaintiff F&D as a named insured, policy GLA4055597, effective

August 31, 2016 to August 31, 2017 (the "2016-2017 Policy").  A true and correct

copy of this policy is attached hereto as Exhibit A.  This policy renewed on

substantially similar terms, as policy number GLA4055597, with a policy period of

August 31, 2017 to August 31, 2018 (the "2017-2018 Policy"); as policy number

3

GLA4055597, with a policy period of August 31, 2018 to August 31, 2019 (the "2018-2019 Policy"); as policy number GLA4055597, with a policy period of August 31, 2019 to August 31, 2020 (the "2019-2020 Policy"); and as policy number GLA4055597, with a policy period of August 31, 2020 to August 31, 2021 (the "2020-2021 Policy").  These Safety National Policies are collectively referenced herein as the "Safety National Policies."

7.

As a subsidiary of FDO Holdings, Inc., and later FDO, F&D is an insured under the above Safety National Policies.

8.

The Safety National 2016-2017 Policy, 2017-2018 Policy, 2018-2019 Policy, and 2019-2020 Policy each have a $1 million "Personal and Advertising Injury" limit of insurance and a $2 million aggregate limit of insurance, subject to a $150,000 self-insured retention ("SIR") per occurrence or offense which reduces by defense costs.  The Safety National 2020-2021 Policy has a $2 million "Personal and Advertising Injury" limit of insurance and a $4 million aggregate limit of insurance, subject to a $150,000 SIR per occurrence or offense which reduces by defense costs.

4

9.

The Safety National Policies each contain nearly identical terms.  In particular, the "Insuring Agreement" for "Coverage B Personal and Advertising Injury Liability" in each of the policies provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

Safety National Policies, Coverage B Insuring Agreement § 1.a.

10.

The Safety National Policies define "Personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of . . . [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"  Safety National Policies, Section V - Definitions, § 14.

11.

In addition, the Safety National Policies apply "to 'personal and advertising injury' caused by an offense arising out of your business, but only if the offense was committed in the 'coverage territory' during the policy period."  Safety National Policies, Coverage B Insuring Agreement § 1.b.

12.

The Safety National Policies define "Advertisement" as "a notice that is broadcast or published to the general public or specific market segments about

5

your goods, products or services for the purpose of attracting customers or supporters." The Safety National Policies further provide that

> For the purposes of this definition:
>
> a.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b.   Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Safety National Policies, Section V - Definitions, § 14.

## 13.

The SIR Endorsement to the Safety National Polices adds a "Good Faith" provision that states as follows:

> You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

Safety National Policies, SIR Endorsement, Section II(H).

## 14.

The Safety National Policies are "occurrence-based" policies, meaning that they generally are triggered based on when the circumstances giving rise to the Underlying Actions (for example the "offense(s)") took place.

US2008 18358504 2

## THE UNDERLYING ACTIONS

### 15.

On or about November 13, 2018, RVC filed a complaint styled *RVC Floor Decor, Ltd. v. Floor and Decor Outlets of America, Inc.*, 2:18-cv-6449 (DRH)(ARL) ("Suit 1"), in the United States District Court for the Eastern District of New York. A true and correct copy of this complaint is attached hereto as Exhibit B.

### 16.

On or about August 27, 2019, RVC filed a complaint styled *RVC Floor Decor, Ltd. v. Floor and Decor Outlets of America, Inc.*, 19-CV-04894 (DRH) (ARL) (the "Suit 2"), in the United States District Court for the Eastern District of New York.  A true and correct copy of this complaint is attached hereto as Exhibit C.

### 17.

Suit 1 and Suit 2 are collectively referenced herein as the "Underlying Actions."

## F&D'S CLAIMS UNDER THE POLICIES

### 18.

F&D has tendered each of the Underlying Actions to Safety National under the Safety National Policies.

US2008 18358504 2

19.

Safety National agreed to defend F&D in the Underlying Actions, pursuant to a purported reservation of rights.  However, as discussed below, Safety National has imposed certain conditions and limitations on its defense that constitute a breach of the Safety National Policies.

20.

Safety National accepted F&D's tender of Suit 1 and by letter dated January 25, 2019, agreed to defend F&D in the Suit 1, pursuant to a purported reservation of rights.

21.

Safety National accepted F&D's tender of Suit 2 and agreed, by letters dated October 25, 2019 and November 14, 2019, to defend F&D in the Suit 2, pursuant to a purported reservation of rights.

22.

On or about March 26, 2021, Safety National abruptly withdrew in writing from F&D's defense, stating that "as of March 18, 2021, Safety National's duty to defend F&D in Suit 1 has terminated."  Safety National also advised F&D that it "will pay no further legal costs after that date" and "hereby disclaims any obligation to further defend or indemnify F&D in Suit 1."  Among other things, Safety National claimed RVC was not seeking compensatory damages in Suit 1,

8

and instead was seeking only disgorgement of profits, treble damages, and punitive damages.  In addition, Safety National claimed in its March 26, 2021 letter that any attorney fee recovery in Suit 2 by F&D must be remitted to Safety National.

23.

On or about April 2, 2021, F&D objected in writing to Safety National's withdrawal from F&D's defense of Suit 1.  In particular, F&D advised that Safety National's withdrawal was a material breach of the insurance policies and constituted bad faith, subjecting Safety National to contractual and extra-contractual damages flowing from Safety National's conduct.

24.

On or about April 15, 2021, Safety National reversed course and agreed to reinstate its defense of F&D in Suit 1, but continued to impose significant reservations related to the defense.  In addition, without notice, Safety National filed a lawsuit in a federal court in New York seeking to disclaim its insurance coverage obligations.

25.

In light of the above, F&D is entitled to, among other things, damages for Safety National's breaches of contract, and determinations and declarations in this Court as to the parties' rights and obligations under the Safety National Policies.

US2008 18358504 2

## COUNT I
## Breach of Contract Against Safety National –
## Breach of the Duty to Defend

26.

F&D incorporates herein by reference paragraphs 1 through 25 as fully set forth herein.

27.

The Underlying Actions allege injury within the coverage of the Safety National Policies.  At the very least, the Underlying Actions allege injury that is potentially covered by the Safety National Policies.  Therefore, Safety National owes F&D an unconditional duty to defend in the Underlying Actions.

28.

F&D has complied with all terms and conditions in the Safety National Policies, or such compliance has been excused, waived or relieved by estoppel. Additionally, none of the exclusions in the Safety National Policies preclude coverage, or Safety National's reliance on such exclusions has been waived or estopped.

29.

Safety National has breached its contractual obligations under the Safety National Policies by withdrawing its defense, and refusing to confirm and provide a full and complete defense to F&D in the Underlying Actions without reservation

10

of rights.  In addition, Safety National has attempted to condition its defense of F&D in the Underlying Actions upon a purported right to seek recoupment from F&D of defense costs that Safety National pays to F&D.  Safety National has no right to such recoupment under the Safety National Policies, or at law.

30.

As a direct and proximate result of Safety National's breach, Safety National has caused F&D to incur damages, including without limitation legal fees and expenses addressing Safety National's breach of contract.

31.

F&D is entitled to recover from Safety National damages arising out of Safety National's breach of its obligations under the Safety National Policies, including attorneys' fees and costs, and interest thereon, in an amount to be proven at trial.

### COUNT II
### Breach of Contract Against Safety National –
### Failure to Strictly Comply with Duties of Good Faith and Fair Dealing

32.

F&D incorporates herein by reference paragraphs 1 through 31 as fully set forth herein.

US2008 18358504 2

33.

F&D has complied with all terms and conditions in the Safety National Policies, or such compliance has been excused, waived or relieved by estoppel. Additionally, none of the exclusions in the Safety National Policies preclude coverage, or Safety National's reliance on such exclusions has been waived or estopped.

34.

Safety National has breached its contractual obligations under the Safety National Policies by failing to strictly comply with the explicit requirement in the policies that it "strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other." Safety National's abrupt withdrawal in Suit 1, and subsequent conduct, violates its explicit contractual duty of good faith and fair dealing. F&D has worked closely with the adjuster for Safety National, regularly consulting with him and involving him in all major decisions. This included discovery, case strategy, and F&D's motion for partial summary judgment. Despite this direct and meaningful involvement, never once did Safety National suggest to F&D that a successful summary judgment motion (here, impacting only

a limited portion of RVC's claims), could eliminate Safety National's defense of the case.

35.

After a partially successful Summary Judgment result, Safety National abruptly abandoned its insured in Suit 1, where F&D continues to face significant damage claims.  But Safety National apparently did not do so in Suit 2, perhaps because its potential liability under the Safety National insurance policies was remote; and it wished to recover the defense costs it has paid.  Then, on the same day it agreed in writing to resume the defense in Suit 1, subject to reservation of rights, it surreptitiously filed a lawsuit in federal court in New York, seeking to disclaim that very obligation.

36.

As a direct and proximate result of Safety National's breach, Safety National has caused F&D to incur damages, including without limitation legal fees and expenses to address Safety National's breach of contract.

37.

F&D is entitled to recover from Safety National damages arising out of Safety National's breach of its obligations under the Safety National Policies,

13

including attorneys' fees and costs, and interest thereon, in an amount to be proven at trial.

## COUNT III
### Declaratory Judgment against Safety National regarding its Duty to Defend under the Safety National Policies

38.

F&D incorporates herein by reference paragraphs 1 through 37 as fully set forth herein.

39.

The Underlying Actions allege injury within the coverage of the Safety National Policies. At the very least, the Underlying Actions allege injury that is potentially covered by the Safety National Policies. Therefore, Safety National owes F&D a duty to defend the Underlying Actions, without subject to reservation or limitation.

40.

F&D has complied with all terms and conditions in the Safety National Policies, or such compliance has been excused, waived or relieved by estoppel. Additionally, none of the exclusions in the Safety National Policies preclude coverage, or Safety National's reliance on such exclusions has been waived or estopped.

41.

In correspondence with F&D, Safety National has taken the erroneous position that RVC is no longer seeking "compensatory damages" from F&D pursuant to Suit 1 and, thus, there is no potential recovery that is insurable under the Safety National Policies.  In particular, Safety National alleges that the disgorgement of F&D's profits under the Lanham Act are not  insurable damages; that trebling the disgorgement of F&D's profits are not insurable damages; and that punitive damages are not insurable damages.

42.

F&D disputes each of these positions taken by Safety National.

43.

In light of the above, there exists a "case of actual controversy" between F&D and Safety National under 28. U.S.C. § 2201, related to Safety National's duty to defend F&D in the Underlying Actions.  Safety National alleges, among other things, that it does not owe a duty to pay the full amount of F&D's defense costs in the Underlying Actions, and that it may recoup certain defense costs from F&D after they are paid.  F&D contends that it is owed a full and complete defense under the Safety National Primary Policies or any right of recoupment.

US2008 18358504 2

44.

A declaration of rights pursuant to 28 U.S.C. §§ 2201 and 2202 would

resolve the uncertainty with respect to the obligations of Safety National to defend

F&D in the Underlying Actions.

45.

F&D is entitled to a declaration that Safety National has a duty to defend

F&D in the Underlying Actions under the terms of the Safety National Policies.

## COUNT IV
## Declaratory Judgment against Safety National regarding Safety National's Erroneous Positions

46.

F&D incorporates herein by reference paragraphs 1 through 45 as fully set

forth herein.

47.

A case or controversy exists between F&D and Safety National with respect

to the scope of the duty to defend and indemnify under the Safety National

Policies.  In particular, Safety National has taken a number of additional erroneous

positions with respect to the Safety National Policies.  These include, without

limitation, the following:

16

(a)     Safety National takes the erroneous position that that 2016-2017 Policy and 2017-18 Policy cannot be triggered for Suit 1, as no alleged offense could have occurred within the policy periods of 2016-17 Policy or 2017-2018 Policy.

(b)     Safety National takes the erroneous position that any alleged offenses that occurred after November 2018, when Suit 1 was filed, are not "fortuitous," and thus, the 2019-2020 Policy and the 2020-2021 Policy do not apply to Suit 1.

(c)     Safety National takes the erroneous position that RVC does not seek damage for trademark infringement that occurred in an "advertisement," and thus Suit 1 does not qualify for coverage for personal and advertising injury.

(d)     Safety National takes the erroneous position that the Safety National Policies could not provide coverage because any alleged personal and advertising injury was caused by or at the direction of F&D with knowledge that the act would inflict advertising injury, and thus would be excluded under a "knowing violation" exclusion.

(e)     Safety National takes the erroneous position that the Safety National Policies do not provide coverage because any alleged personal and advertising injury was based on the oral or written publication of material by F&D with "knowledge of its falsity," and thus is excluded from coverage.

17

(f)     Safety National takes the erroneous position that any coverage under 2019-2020 Policy and/or the 2020-2021 Policy is excluded because any personal and advertising injury arising out of the publication of material necessarily must have taken place before each policy incepted, under a "prior publication" exclusion in those policies.

(g)     Safety National takes the erroneous position that, as of March 18, 2021, it has no further obligation to defend or to indemnify F&D in Suit , following issuance of the March 18, 2021 Order.  Safety National further takes the erroneous position that F&D has been and will be unjustly enriched by the money paid by Safety National to defend Suit 1, and is entitled to a money judgment for such amounts.

(h)     Safety National takes the erroneous position that, notwithstanding its material breach as described above, should the Court in Suit 2 award F&D its fees and costs defending Suit 2, the policy provisions set forth in the Safety National Policies require F&D to remit those fees and costs to Safety National; that F&D will be unjustly enriched by the receipt of those fees; and that F&D will be in breach of the Policies if F&D does not remit those fees to Safety National.

48.

F&D disputes each of these positions taken by Safety National.

18

49.

F&D has complied with all terms and conditions in the Safety National Policies, or such compliance has been excused, waived or relieved by estoppel. Additionally, none of the exclusions in the Safety National Policies preclude coverage, or Safety National's reliance on such exclusions has been waived or estopped.

50.

In light of the above, there exists a "case of actual controversy" between F&D and Safety National with respect to their rights and obligations under the Safety National Policies, that is appropriate for resolution pursuant to 28 U.S.C. §§ 2201 and 2202. F&D is entitled to a declaration that the Underlying Actions are covered by the Safety National Policies.

\* \* \*

WHEREFORE, F&D respectfully seeks the following:

(1)     That the Court enter judgment in favor of F&D on all causes of action;

(2)     On Count One, damages for breach of contract in an amount sufficient to compensate F&D for Safety National's breach;

US2008 18358504 2

(3)     On Count Two, damages for breach of contract in an amount sufficient to compensate F&D for Safety National's breach;

(4)     On Count Three, judgment on F&D's behalf declaring that Safety National has a duty to defend F&D in Suit 1 and Suit 2, not subject to any limitation or restriction;

(4)     On Count Four, judgment on F&D's behalf declaring that Safety National has a duty to defend F&D, not subject to any limitation or restriction; and that the positions identified in Count Four shall be resolved in favor of F&D;

(5)     F&D's reasonable attorneys' fees, pre-judgment and post-judgment interests, costs and expenses of this action;

(6)     This case be tried by a jury; and

(7)     Any other, further relief as the Court deems equitable and just.

US2008 18358504 2

## **JURY TRIAL DEMAND**

F&D hereby demands a trial by jury of all issues so triable.

Dated:  April 15, 2021

Respectfully submitted,


s/Brent W. Brougher
Brent W. Brougher
Georgia Bar No. 086373
bbrougher@kilpatricktownsend.com
Joe P. Reynolds
Georgia Bar No. 358795
jreynolds@kilpatricktownsend.com
**KILPATRICK TOWNSEND &
STOCKTON LLP**
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309
Tel. (404) 815-6500
Fax  (404) 815-6555
Attorneys for Plaintiffs

21