# Exhibit A

# SAFETY NATIONAL CASUALTY CORPORATION

## PRIVACY STATEMENT

### Our Commitment To Our Customers

Safety National Casualty Corporation ("Safety National") is proud to have provided quality products and services to its customers for over 50 years. We greatly appreciate the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

### We Respect Your Privacy

When you apply to Safety National for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information is regulated by law. Safety National and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

### Types Of Information We Collect

Safety National obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

### What We Do With Your Information

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to non-affiliates as described in this notice or as otherwise permitted by law.

### To Whom Do We Disclose Your Information

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety National, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

### Independent Sales Agents or Brokers

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety National's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

**SAFETY NATIONAL CASUALTY CORPORATION**
1832 Schuetz Road
St. Louis, MO 63146
(888) 995-5300

A STOCK COMPANY

# COMMERCIAL POLICY

| | |
|---|---|
| SECRETARY | PRESIDENT |

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND
ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

CP 99 03 03 14

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

**COMMERCIAL GENERAL LIABILITY
COVERAGE FORM DECLARATIONS**

| | Policy Period | |
|---|---|---|
| **Policy Number** | **From** | **To** |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

**Previous Policy Number:**

## Transaction
New Business

| **Named Insured and Address** | **Agent** |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | 61866<br>LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>**Telephone:** (704) 556-4121 |
| **Business Description**<br>FLOORING RETAILER | **Type of Business**<br>Corporation |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | Combined BI & PD |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 25,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $ 2,000,000 |

### DESCRIPTION OF BUSINESS

FORM OF BUSINESS:

☐ INDIVIDUAL          ☐ PARTNERSHIP          ☐ JOINT VENTURE          ☐ TRUST

☐ LIMITED LIABILITY COMPANY          ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION:  FLOORING RETAILER

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO  63146
(888) 995-5300

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| | |
|---|---|
| Policy Number: | GLA4055597 |
| Named Insured: | FDO HOLDINGS, INC. |
| Agent: | LOCKTON COMPANIES |
| Effective Date: | 08/31/2016 |

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| Schedule on File with Company | See Schedule on File with Company |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| Schedule on file with Company | Floor Covering Stores | 12805 | Gross Sales | See Composite Rating Plan – Premium Endorsement SNGL 045 05 14 Attached | | | |

| | | | |
|---|---|---|---|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $ 334,495 | |
| | STATE SURCHARGES (if applicable) | | |
| | TOTAL DUE AT INCEPTION: | $ 334,495 | |
| | AT EACH ANNIVERSARY | | |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) | | |

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See Attached Schedule of Forms and Endorsements |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

# INSTALLMENT SCHEDULE

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | 61866<br>LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>Telephone: (704) 556-4121 |

| INSTALLMENT NUMBER | PREMIUM DUE | STATE SURCHARGE | TOTAL AMOUNT DUE | DUE DATE |
|---|---|---|---|---|
| 001 | $ 83,623.75 | $ 0.00 | $ 83,623.75 | 08/31/2016 |
| 002 | $ 83,623.75 | $ 0.00 | $ 83,623.75 | 11/30/2016 |
| 003 | $ 83,623.75 | $ 0.00 | $ 83,623.75 | 02/28/2017 |
| 004 | $ 83,623.75 | $ 0.00 | $ 83,623.75 | 05/31/2017 |
| | $ 334,495.00 | $ 0.00 | $ 334,495.00 | Total Estimated Premium |

# SCHEDULE OF NAMED INSURED(S)

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>Telephone: (704) 556-4121 |

**Name & Address**

FDO Acquisition Corp.
Floor and Decor Outlets of America, Inc.

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>**Telephone:** (704) 556-4121 |

| Form Number | Form Title |
|---|---|
| PN 99 02 0209 | Privacy Statement |
| CP 99 03 03 14 | Commercial Policy Cover |
| CG 10 01 11 09 | Commercial General Liability Declarations |
| IL 10 02 12 08 | Installment Schedule |
| IL 10 03 12 08 | Schedule Of Named Insured(s) |
| IL 10 06 12 08 | Schedule Of Forms And Endorsements |
| IL N 001 09 03 | Fraud Statement |
| IL P 001 01 04 | U.S. Treasury Department's Office Of Foreign Assets Control |
| IL N 014 09 03 | Arizona Fraud Statement |
| IL N 018 09 03 | California Fraud Statement |
| IL N 020 09 03 | Colorado Fraud Statement |
| SNIL PN 001 09 0509 | Florida Important Notice |
| IL N 175 11 11 | Illinois Notice to Policyholders Regarding the Religious Freedom |
| IL N 048 09 03 | Louisiana Fraud Statement |
| IL N 167 01 13 | Maryland Fraud Statement |
| IL N 072 03 04 | New Jersey Fraud Statement - Application |
| IL N 073 03 04 | New Jersey Fraud Statement - Claim Form |
| IL N 082 09 03 | Ohio Fraud Statement |
| IL N 088 09 03 | Pennsylvania Fraud Statement |
| IL 09 10 07 02 | Pennsylvania Notice |
| SNIL PN 004 42 0909 | Special Texas Notice - Notification Of The Availability |
| IL N 098 09 03 | Tennessee Fraud Statement |
| SNIL PN 003 42 0610 | Texas Exclusion - Asbestos Advisory Notice |
| SNIL PN 002 42 0409 | Texas Exclusion -Lead Contamination Advisory Notice |
| SNIL PN 001 42 0113 | Texas Important Notice |
| IL N 106 09 03 | Virginia Fraud Statement |
| CG 20 05 04 13 | Additional Insured - Controlling Interest |
| CG 20 26 04 13 | Additional Insured - Designated Person or Organization |
| CG 20 29 04 13 | Additional Insured - Grantor Of Franchise |
| CG 20 28 04 13 | Additional Insured - Lessor Of Leased Equipment |
| CG 20 11 04 13 | Additional Insured - Managers Or Lessors Of Premises |
| CG 20 15 04 13 | Additional Insured - Vendors |
| SNGL 023 1209 | Additional Insured By Contract Or Agreement - Primary |
| SNGL 004 1111 | Amended Definition Of Bodily Injury |
| CG 21 51 04 13 | Amendment Of Liquor Liability Exclusion - Exception |

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>Telephone: (704) 556-4121 |

| | |
|---|---|
| CG 24 22 04 13 | Amendment of Coverage Territory - Worldwide Coverage |
| SNGL 044 0514 | Asbestos Exclusion |
| SNGL 025 1111 | Batch Clause Endorsement |
| CG 24 12 11 85 | Boats |
| CG 21 70 01 15 | Cap On Losses from Certified Acts of Terrorism |
| SNGL 012 1209 | Co-Employee Exclusion Deleted |
| SNGL 045 0514 | Composite Rating Plan - Premium Endorsement |
| SNGL 035 1111 | Contractual Liability Exclusion -Personal & Advertising |
| IL 09 85 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| SNGL 002 0908 | ERISA Exclusion |
| CG 02 24 10 93 | Earlier Notice Of Cancellation Provided By Us |
| SNGL 049 0514 | Earlier Notice of Nonrenewal |
| SNGL 054 0514 | Employee Benefits Liability Coverage With Self-Insured |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 07 05 14 | Exclusion - Access or Disclosure of Confidential |
| SNGL 030 1111 | Expected Or Intended Acts |
| CG 21 67 12 04 | Fungi Or Bacteria Exclusion |
| SNGL 032 1111 | Incidental/Emergency Medical Malpractice Liability |
| SNGL 020 1111 | Knowledge Of Occurrence |
| SNGL 043 0514 | Lead Contamination Exclusion |
| SNGL 046 0514 | Majority Interest - Broadened Named Insured Endorsement |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion End (Broad Form) |
| SNGL 024 1111 | Self-Insured Retention Endorsement |
| CG 21 96 03 05 | Silica Or Silica-Related Dust Exclusion |
| SNGL 047 0514 | Special Notice Of Cancellation Service Provided To Identified |
| SNGL 037 1111 | Third Party Discrimination - Personal & Advertising Injury |
| SNGL 038 1111 | Unintended Failure To Provide Notice Of Occurrence |
| CG 24 04 05 09 | Waiver Of Transfer Of Rights Of Recovery Against Others |
| IL 02 58 12 14 | Arizona Changes - Cancellation and Nonrenewal |
| CG 32 34 01 05 | California Changes |
| IL 02 70 09 12 | California Changes - Cancellation And Nonrenewal |
| IL 02 28 09 07 | Colorado Changes - Cancellation And Nonrenewal |
| IL 01 25 11 13 | Colorado Changes - Civil Union |
| CG 02 20 03 12 | Florida Changes - Cancellation And Nonrenewal |
| IL 02 62 02 15 | Georgia Changes - Cancellation And Nonrenewal |

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| GLA4055597 | 08/31/2016 | 08/31/2017 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| FDO HOLDINGS, INC.<br>2233 LAKE PARK DR STE 400<br>SMYRNA, GA 30080 | LOCKTON COMPANIES<br>4725 PIEDMONT ROW DRIVE<br>SUITE 510<br>CHARLOTTE, NC 28210<br><br>Telephone: (704) 556-4121 |

| | |
|---|---|
| CG 02 00 12 07 | Illinois Changes - Cancellation And Nonrenewal |
| IL 01 47 09 11 | Illinois Changes - Civil Union |
| IL 01 62 10 13 | Illinois Changes - Defense Costs |
| IL 02 77 03 12 | Louisiana Changes - Cancellation And Nonrenewal |
| CG 32 10 04 05 | Louisiana Changes - Fungi Or Bacteria Exclusion |
| CG 01 25 03 03 | Louisiana Changes - Insuring Agreement |
| CG 01 18 12 04 | Louisiana Changes - Legal Action Against Us |
| CG 26 84 12 04 | Louisiana Changes - Transfer Of Rights Of Recovery |
| CG 02 01 01 15 | Maryland Changes |
| CG 26 73 12 04 | Maryland Changes - Premium Audit Condition |
| IL 02 51 09 07 | Nevada Changes - Cancellation And Nonrenewal |
| IL 01 15 01 10 | Nevada Changes - Domestic Partnership |
| IL 02 08 09 07 | New Jersey Changes - Cancellation And Nonrenewal |
| IL 01 41 09 08 | New Jersey Changes - Civil Union |
| CG 26 20 10 93 | New Jersey Changes - Loss Information |
| IL 02 69 09 08 | North Carolina Changes - Cancellation And Nonrenewal |
| IL 02 44 09 07 | Ohio Changes - Cancellation And Nonrenewal |
| IL 02 46 09 07 | Pennsylvania Changes - Cancellation And Nonrenewal |
| IL 01 20 10 13 | Pennsylvania Changes - Defense Costs |
| IL 02 50 09 08 | Tennessee Changes - Cancellation And Nonrenewal |
| CG 01 03 06 06 | Texas Changes |
| IL 02 75 11 13 | Texas Changes - Cancellation And Nonrenewal Provisions |
| IL 01 68 03 12 | Texas Changes - Duties |
| CG 26 39 12 07 | Texas Changes - Employment-Related Practices Exclusion |
| CG 01 86 12 04 | Utah Changes |
| IL 02 66 09 08 | Utah Changes - Cancellation And Nonrenewal |
| CG 01 47 11 13 | Utah Changes - Common-Interest Associations |
| CG 01 79 07 10 | Virginia Changes |
| IL 01 38 10 15 | Virginia Changes - Cancellation and Nonrenewal |
| IL 00 17 11 98 | Common Policy Conditions |
| CG 00 01 04 13 | Commercial General Liability Coverage Form |

**IL N 001 09 03**

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**IL N 014 09 03**

# ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**IL N 018 09 03**

# CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**IL N 020 09 03**

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

SNIL PN 001 09
(Ed. 05-09)

# IMPORTANT NOTICE

To obtain general information or for complaint resolution:

You may call Safety National Casualty Corporation's toll-free telephone number for general information or to resolve a complaint:

**1-888-995-5300**

You may also write to Safety National Casualty Corporation:

**Safety National Casualty Corporation
1832 Schuetz Road
St. Louis, MO 63146**

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

Insured  FDO HOLDINGS, INC.          Date of Notice   10/05/2016

Policy No. GLA4055597               Policy Period 08/31/2016  to 08/31/2017

Page 1 of 1

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

**IL N 048 09 03**

# LOUISIANA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**IL N 167 01 13**

# MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

IL N 072 03 04

# NEW JERSEY FRAUD STATEMENT – APPLICATION

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**IL N 073 03 04**

# NEW JERSEY FRAUD STATEMENT – CLAIM FORM

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**IL N 082 09 03**

# OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

 © ISO Properties, Inc., 2003

**IL N 088 09 03**

# PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

© ISO Properties, Inc.,  2001

SNIL PN 004 42
(Ed. 09-09)

# IMPORTANT NOTICE TO POLICYHOLDER.  PLEASE READ IT CAREFULLY.

## SPECIAL TEXAS NOTICE – NOTIFICATION OF THE AVAILABILITY OF LOSS CONTROL INFORMATION/SERVICES

In an effort to help prevent and reduce potential claims and losses, Safety National is committed to providing loss control information and services, at no charge, to its Texas commercial automobile liability and general liability policyholders.  For more information or to request services, please call our Loss Control Department at the following toll free number:

**1-888-995-5300**

You may also write to our Loss Control Department at:

**Loss Control Department**
**Safety National Casualty Corporation**
**1832 Schuetz Road**
**St. Louis, MO 63146**

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

Insured FDO HOLDINGS, INC.                    Date of Notice 10/05/2016

Policy No. GLA4055597                          Policy Period 08/31/2016      To 08/31/2017

Page 1 of 1

IL N 098 09 03

# TENNESSEE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

 © ISO Properties, Inc.,  2003

SNIL PN 003 42
(Ed. 06-10)

# EXCLUSION – ASBESTOS
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does **NOT** form a part of your insurance contract. The Notice is designed to alert you to coverage changes when the exclusion for silica or silica-related dust is attached to this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply. Please read your policy, and the endorsements attached to your policy, carefully.

This Notice contains a brief synopsis of the following endorsements:

- **SNGL 044 0514 – Asbestos Exclusion**

When this endorsement is attached to your policy, coverage is excluded for bodily injury or property damage arising out of the inhalation, ingestion or prolonged physical exposure to asbestos or goods or products containing asbestos; the use of asbestos in constructing or manufacturing any goods, products or structure; the removal of asbestos from any goods, products or structure; the manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

Coverage is also excluded for payment for the investigation or defense of any claim or "suit" or any loss, cost, expense, fine or penalty related to the exclusion outlined above.

The attachment of this endorsement may result in a restriction of coverage.

© ISO Properties, Inc., 2004

SNIL PN 002 42
(Ed. 04-09)

# EXCLUSION – LEAD CONTAMINATION
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does **NOT** form a part of your insurance contract. The Notice is designed to alert you to coverage changes when the exclusion for silica or silica-related dust is attached to this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply. Please read your policy, and the endorsements attached to your policy, carefully.

This Notice contains a brief synopsis of the following endorsements:

- **SNGL 043 0514 – Lead Contamination Exclusion**

  When this endorsement is attached to your policy, coverage is excluded for bodily injury or property damage arising out of the actual or alleged or suspected ingestion, inhalation, absorption or prolonged physical exposure or threat of exposure to lead in any form, or goods or products containing any form of lead; use of any form of lead in constructing or manufacturing any good, product or structure; removal of any form of lead from any good, product or structure; or manufacture, sale, transportation, storage or disposal of lead or goods or products containing any form of lead.

  Coverage is also excluded for any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of lead; due to any request, demand, claim or "suit' on the part of any insured, governmental authority or others.

The attachment of this endorsement may result in a restriction of coverage.

© ISO Properties, Inc., 2004

SNIL PN 001 42
(Ed. 01-13)

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Safety National Casualty Corporation's toll-free telephone number for information or to make a complaint at:

**1-888-995-5300**

You may also write to Safety National Casualty Corporation at:

**Safety National Casualty Corporation**
**1832 Schuetz Road**
**St. Louis, MO 63146**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

Texas Department of Insurance
P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web:  http://www.tdi.texas.gov/
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

Insured   FDO HOLDINGS, INC.                    Date of Notice   10/05/2016

Policy No.  GLA4055597                           Policy Period 08/31/2016  to 08/31/2017

Page 1 of 1

**IL N 106 09 03**

# VIRGINIA FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 20 05 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person(s) Or Organization(s):** As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less. Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

**1.** Their financial control of you; or

**2.** Premises they own, maintain or control while you lease or occupy these premises.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: GLA4055597                     **COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 26 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 20 29 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
|---|
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| **Designation Of Premises (Part Leased To You):** |
| --- |
| All locations owned by, leased to or occupied by the insured. |

| **Name Of Person(s) Or Organization(s) (Additional Insured):** |
| --- |
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |

| **Additional Premium:** | $ Included |
| --- | --- |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. | All your Products |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**CG 20 15 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 2**

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

    **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

    **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 CG 20 15 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED BY CONTRACT OR AGREEMENT – PRIMARY BASIS

This endorsement modifies insurance provided under the following Coverage Form:

COMMERCIAL GENERAL LIABILITY
PRODUCTS/COMPLETED OPERATIONS LIABILITY
LIQUOR LIABILITY
POLLUTION LIABILITY

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

## SCHEDULE

| Name of Additional Insured Person(s) or Organization(s): |
|---|
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies, but only for the limits agreed to in such contract or the Limits of Liability provided by this policy, whichever is less.  Any individually scheduled additional insureds shall not be construed to override nor negate this blanket additional insured. |
| Designated Project, Location, or Work of Covered Operations: |
| As per written contract or agreement with the above described person(s) or organization(s). |

## CHANGES

**SECTION II - WHO IS AN INSURED** is amended to include:

**4.**   The   person(s) or organization(s) shown in the Schedule above with whom you have agreed in a written contract to provide insurance such as is afforded under this Coverage Form, is included as an Additional Insured subject to the below:

**a.**   Insurance for such Additional Insured(s) scheduled above shall be afforded only to the extent that such Additional Insured is liable for "bodily injury", "property damage" or "personal and advertising injury" caused by your acts or omissions while actively engaged in the performance of your ongoing operations involving the project(s), locations(s), or work designated in the Schedule and as specified in the contract between you and the above scheduled Additional Insured(s).

**b.**   The insurance afforded under this Coverage Form to such Additional Insured(s) applies only:

**(1)**   If the "occurrence" or offense takes place subsequent to the execution and effective date of such written contract: and,
**(2)**   While such written contract is in force, or until the end of the policy period, which ever occurs first.

**c.**   **How Limits Apply to Additional Insured(s)**
The most we will pay on behalf of the Additional Insured(s) scheduled above is the lesser of:

**(1)**   The limits of insurance specified in the written contract or written agreement; or,
**(2)**   The Limits of Insurance provided by the Coverage Form.

The amount we will pay on behalf of such Additional Insured(s) shall be a part of, and not in addition to, the Limits of Insurance shown in the Coverage Form Declarations and described in this section.  Such amount will thus not increase the Limits of Insurance shown for the Coverage Form.

**d.   Obligations at the Additional Insured's Own Cost**
No Additional Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**SECTION IV – CONDITIONS** is amended by deleting item **a. Primary Insurance** under **4. Other Insurance** and replacing such item by the following, **only** with respect to insurance provided to the Additional Insured(s) shown in the above Schedule:

**a.   Primary Insurance and/or Primary and Non-Contributory Insurance**
This insurance is primary if you have agreed in a written contract that this insurance is to be primary.  If you have agreed in a written contract that this insurance is primary and non-contributory with the Additional Insured(s) own insurance, this insurance is primary and we will not seek contribution from that other insurance.

The Additional Insured(s) scheduled above shall be subject to all other conditions set forth in the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016            Policy No.  GLA4055597            Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                         Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDED DEFINITION OF BODILY INJURY

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## CHANGE

Under **SECTION V – DEFINITIONS** and **SECTION VI – DEFINITIONS** for POLLUTION LIABILITY COVERAGE FORM, the definition of "Bodily injury" is amended to include the following:

"Bodily injury" shall also mean mental anguish, shock, humiliation or emotional distress sustained by a person in conjunction with a covered "occurrence" or offense when accompanied by physical injury, sickness or disease.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                   Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 21 51 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION – EXCEPTION FOR SCHEDULED PREMISES OR ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Premises Or Activities: |
|---|
| All New Jersey premises of the Insured as required by New Jersey Law. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following replaces Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license;

**(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of:

**(i)** The selling, serving or furnishing of alcoholic beverages at the specified activity described in the Schedule; or

**(ii)** Permitting any person to bring any alcoholic beverages on the premises described in the Schedule, for consumption on the premises described in the Schedule.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 24 22 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE TERRITORY – WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **Section IV – Conditions:**

**Expanded Coverage Territory**

**1.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**2.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**3.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

**4.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

**B.** The following is added to Paragraph **4.b.(1)** under the **Conditions** section:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

**(c)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** If the insured's liability to pay damages is determined in a "suit" brought outside the United States of America (including its territories and possessions), Puerto Rico or Canada; or

**(ii)** That is coverage required by law, regulation or other governmental authority in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada.

**C.** The definition of "coverage territory" in the **Definitions** section is replaced by the following:

"Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

 © Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**CHANGE**

This insurance does not apply to "bodily injury" or "property damage" arising out of:

(1)   The inhalation, ingestion or prolonged physical exposure to asbestos or goods or products containing asbestos;

(2)   The use of asbestos in constructing or manufacturing any goods, products or structure;

(3)   The removal of asbestos from any goods, products or structure;

(4)   The manufacture, sale, transportation, storage or disposal of asbestos, or goods or products containing asbestos; or

(5)   Payment for the investigation or defense of any claim or "suit" or any loss, cost, expense, fine or penalty related to the above exclusions.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                    Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BATCH CLAUSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

## CHANGE

**SECTION V – DEFINITIONS,** the definition titled "Occurrence" is amended to include the following:

> With respect to a "products–completed operations hazard", all "bodily injury" or "property damage" arising out of one actual or alleged common cause, condition, event or defect shall be considered as arising out of one "occurrence".

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                         Premium $ Included

Insurance Company Safety National Casualty Corporation

                                                    Countersigned By _____

SNGL 025 1111              Safety National Casualty Corporation                    Page 1 of 1

POLICY NUMBER: GLA4055597                                 **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description of Watercraft:**

Any boat you rent, up to 50 feet in length, that is operated by a paid crew and is not transporting passengers or property for a charge.

**Additional Premium:**  Included

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

**CG 24 12 11 85**          Copyright, Insurance Services Office, Inc.,  1984, 1992          **Page 1 of 1**

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART
  UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# CO-EMPLOYEE EXCLUSION DELETED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

## CHANGES

**Section II - Who is an Insured, 2. a. (1) (a)** is amended to read:

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to your other "volunteer workers" while performing duties related to the conduct of your business;

**Section II - Who is an Insured, 2. a. (1) (b)** is amended to read:

(b)  To the spouse, child, parent, brother or sister of that "volunteer worker" as a consequence of Paragraph (1)(a) above;

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                        Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMPOSITE RATING PLAN – PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The premium for the insurance afforded under this policy will be computed on the basis of the composite rates and basis of premium shown below and in accordance with our rules, rates, rating plans, premiums, minimum premium and other terms of the policy.

Rates and Premiums

| Coverage | Vehicle Type | Premium Base | Estimated Base Exposure | Composite Rate | Advance Premium | Physical Damage Deductible | |
|---|---|---|---|---|---|---|---|
| | | | | | | Comp./Spec. Causes of Loss | Collision |
| General Liability | N/A | Per $1,000 of Total Revenue | $985,079,356 | $0.336212 | Included | N/A | N/A |
| TRIA | N/A | Final Audited Commercial General Liability Premium | Included | $0.00996 | Included | N/A | N/A |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016            Policy No.  GLA4055597            Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                    Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

**THIS ENDORSEMENT CHAQNGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY EXCLUSION  - PERSONAL & ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## CHANGE

The following is added to **Paragraph 2. e.** under **SECTION I- COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

However, this exclusion does not apply to **Paragraphs 14.a, b., c., d., and e.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016                    Policy No. GLA4055597                    Endorsement No.

Named Insured FDO HOLDINGS, INC.                                                       Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

POLICY NUMBER: GLA4055597

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**    $ 3,299 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** \_\_\_\_    **% Year: 20** \_\_\_\_\_ <br> (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** \_\_\_\_    **% Year: 20** \_\_\_\_\_ <br> (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

**IL 09 85 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# ERISA EXCLUSION

This endorsement modifies insurance provided under the following Coverage Part:

COMMERCIAL GENERAL LIABILITY

## CHANGES

This policy shall not apply to claims for which the insured is liable because of liability imposed by the Employment Retirement Income Security Act of 1974 (ERISA), including subsequent amendments, or any similar federal, state or local law or regulation.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016        Policy No. GLA4055597        Endorsement No.

Named Insured FDO HOLDINGS, INC.                                    Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

 COMMERCIAL GENERAL LIABILITY COVERAGE PART
 LIQUOR LIABILITY COVERAGE PART
 POLLUTION LIABILITY COVERAGE PART
 PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Number of Days' Notice** 90 days except 10 days' notice for non-payment of premium where allowed by state law.

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**CHANGE**

If we decide not to renew this policy, the minimum number of days for notice of nonrenewal, as provided by the policy or any applicable state nonrenewal endorsement, is increased to 90 days.

If any applicable state nonrenewal endorsement provides for more than the specified number of days' notice of nonrenewal shown above, this provision shall not apply.

This earlier notice of nonrenewal shall be void if we do not receive adequate renewal information needed to underwrite the renewal of the account prior to the above specified time frame for providing notice of nonrenewal.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                       Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE WITH SELF-INSURED RETENTION ("SIR")

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee SIR | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | **each employee** | $   150,000 | $  Included |
| | $ 2,000,000 | **aggregate** | | |
| **Retroactive Date:** | N/A | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Safety National Casualty Corporation

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Em-ployee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Self-Insured Retention ("SIR")**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the SIR amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this SIR.

**b.** The SIR amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the SIR amount.

**d.** We may pay any part or all of the SIR amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the SIR amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error    or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected un-less any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each in-surer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   **5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   **18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Safety National Casualty Corporation
SNGL 054 0514

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXPECTED OR INTENDED ACTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## CHANGE

**Paragraph 2. Exclusions, a. Expected or Intended Injury** of the **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** section within the **COVERAGES** section of the above referenced forms except the POLLUTION LIABILITY COVERAGE FORM is deleted in its entirety and replaced as follows:

**a.        Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

For the POLLUTION LIABILITY COVERAGE FORM, **Paragraph 4. Exclusions**, **b. Expected Or Intended Injury** of the **POLLUTION LIABILITY COVERAGE** section is deleted in its entirety and replaced as follows:

**b.        Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No.  GLA4055597          Endorsement No.

Named Insured  FDO HOLDINGS, INC.                              Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INCIDENTAL/EMERGENCY MEDICAL MALPRACTICE LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

## CHANGE

**SECTION II – WHO IS AN INSURED,  2.a.(1)(d)** is deleted in its entirety and replaced by the following:

**(d)** Arising out of his or her providing or failing to provide professional health care services. However, the following "Good Samaritan" type activities shall not be considered rendering of professional medical health care services and shall not be excluded by this Item:

Rendering of emergency medical first aid, without charge, by a nurse, paramedic, emergency medical technician, or a doctor when such services are outside the normal scope of duties such person(s) performs for you, and when rendered by such person(s) due to the unavailability of other appropriate professional medical or paramedical practitioners at the time of the emergency.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                       Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## CHANGE

The following is added to the **Duties In the Event of Occurrence, Offense, Injury, Pollution Incident, Claim or Suit** under the **CONDITIONS** section of the above-listed coverage forms:

It is agreed that knowledge of an "occurrence", offense, injury, pollution incident, claim or "suit" by your agent, servant or "employee" will not in itself be considered to be your knowledge of the "occurrence", offense, claim, or "suit" unless the individual(s) in the following position(s) or department(s) shall have received such notice from the agent, servant or "employee":

```
CEO or CFO
```

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured FDO HOLDINGS, INC.                                  Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

SNGL 020 1111                     Safety National Casualty Corporation                     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description of Premises, Work or Operations

Standard Operations

This endorsement applies only with respect to the premises, work or operations listed in the Schedule above.  If no entry appears in the Schedule, this endorsement applies with respect to all premises, work and operations.

This insurance does not apply to:

1.  "Bodily injury" or "property damage" arising out of the actual or alleged or suspected:
    a.  Ingestion, inhalation, absorption or prolonged physical exposure or threat of exposure to lead in any form, or goods or products containing any form of lead;
    b.  Use of any form of lead in constructing or manufacturing any good, product or structure;
    c.  Removal of any form of lead from any good, product or structure; or
    d.  Manufacture, sale, transportation, storage or disposal of lead or goods or products containing any form of lead;

2.  Any loss, cost or expense arising out of any request, demand or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to, or assess the effects of lead; or repair, replace or improve any property as a result of such effects; or

3.  Any loss, cost or expense arising our of any claim or "suit" by or on behalf of a governmental authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating or in any way responding to, or assessing the effects of lead; or repairing, replacing or improving any property as a result of such effects.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No. GLA4055597          Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                        Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur in the mailing states that require countersignature)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MAJORITY INTEREST - BROADENED NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### CHANGE

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any subsidiaries, affiliated, associated, controlled or allied companies, corporations or firms in which, during the policy period, the Named Insured shown in the Declarations owns a majority interest.

This insurance shall be excess over any other valid and collectible insurance available to the above entities but only to the extent that the amount of loss exceeds the Limits of Insurance for Liability Coverage of the other insurance, and then only for an amount not exceeding the difference between any higher applicable Limits of Insurance for Liability Coverage stated in the Declarations of this policy and the Limits of Insurance for Liability Coverage of the other insurance.

The first Named Insured shown in the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the provision or receipt of notice of cancellation, the payment of premiums and the receiving of return premiums, if any.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016         Policy No.  GLA4055597         Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                    Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| Self-Insured Retention | $ | 150,000 | Per "Occurrence" |
|---|---|---|---|
| Self-Insured Retention | $ | N/A | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | 5,000,000 – Minimum adjustable at audit | |

## CHANGE

**I.** The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

   **A. SELF-INSURED RETENTION**

   Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

   After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention.  Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form.  The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

   **1. SELF-INSURED RETENTION PER OCCURRENCE**

   If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

**2.   SELF-INSURED RETENTION PER CLAIM**

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention.  The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

**3.   AGGREGATE SELF-INSURED RETENTION AMOUNT**

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule.  If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy.  The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

**B.   LIMIT OF INSURANCE**

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

**C.   OUR RIGHT TO REIMBURSEMENT**

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit".
If we do so, you must promptly reimburse us for our payment.

**II.   CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS**

**A.**   The following is added to the **BANKRUPTCY** Condition:

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you.  Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1.   Deplete or reduce the Self-Insured Retention;
2.   Increase our liability under this policy; or
3.   Relieve us of our obligations under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In no event will we assume responsibility or obligations of the "insured".

B.  The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT**(as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1.  If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2.  If an "occurrence", offense, claim or "suit" involves:

    a.  Death;
    b.  Brain or spinal injury;
    c.  Amputation;
    d.  Loss of use of an arm, eye or leg;
    e.  Severe burns involving more than 25% of the body;
    f.  Multiple fractures;
    g.  Permanent and total disability;
    h.  Sexual abuse or molestation;
    i.  Significant psychological or neurological involvement;
    j.  Severe internal body organ damage or loss;
    k.  Severe cosmetic deformity or disfigurement;
    l.  A hospital stay of two weeks or longer;
    m.  An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
    n.  An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

C.  The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us.  The "insured" must do nothing after loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.  Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

D.  **DEFENSE & SETTLEMENT** shall be added as follows:

1.  You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so.  If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2.  We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention.  If we avail ourselves of that right, you must cooperate with us.  In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

3.  We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount.  If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal.  Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative.  We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

**E.   CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

**F.   SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis.  However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage.  In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

**G.  MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction.  Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

**H.  GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**I.   HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

**J.   REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

**K.   DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction.    We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator.  If the parties fail to agree on one arbitrator, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots.  If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration.  A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

**III.  ADDITIONAL DEFINITIONS**

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 08/31/2016          Policy No. GLA4055597          Endorsement No.

Insured FDO HOLDINGS, INC.                                            Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL NOTICE OF CANCELLATION SERVICE PROVIDED TO IDENTIFIED THIRD PARTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### CHANGE

The following new provision is added to **A. Cancellation** of the **COMMON POLICY CONDITIONS** or such other applicable state cancellation endorsement:

As a special service to you, if we cancel this policy for any reason other than non-payment of premium, within thirty (30) days prior to the effective date of cancellation, we will mail a copy of such written notice of cancellation to all third persons whose name and address have, during the applicable policy period, been placed on file with us through your broker of record due to third party contractual requirements relating to such notice.

As a special service to you, if we cancel this policy for non-payment of premium, within ten (10) days prior to the effective date of cancellation, we will mail a copy of such written notice of cancellation to all third persons whose name and address have, during the applicable policy period, been placed on file with us through your broker of record due to third party contractual requirements relating to such notice.

If we have been provided with an electronic address of such third parties, at our election we may send notice of cancellation to such third parties by electronic mail.

Notice of cancellation of coverage provided to a certificate holder is a courtesy only.  Failure to provide such notice will not extend the policy cancellation date, negate the cancellation of the policy, nor confer any rights nor expectations upon the certificate holder nor subject us, our agents nor representatives to liability for failure to provide notice.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016           Policy No. GLA4055597           Endorsement No.

Named Insured FDO HOLDINGS, INC.                                    Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur in the mailing states that require countersignature)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# THIRD PARTY DISCRIMINATION - PERSONAL & ADVERTISING INJURY DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## CHANGE

**SECTION V – DEFINITIONS, Part 14. "Personal and advertising injury"** is amended to include the following:

h. Discrimination against a natural person on the basis of race, color, ethnic origin, gender, sexual orientation, physical disability or religious belief but only if such discrimination is not at the direction of you, your spouse, members, partners, executive officers, directors or your stockholders. This definition does not include, and this policy provides no coverage for, for acts that are directly or indirectly related to discrimination against your employees, prospective employees or terminated employees.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No.  GLA4055597          Endorsement No.

Named Insured  FDO HOLDINGS, INC.                              Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

# UNINTENDED FAILURE TO PROVIDE
# NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## CHANGE

**Paragraph  2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of each of the above referenced forms, except OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM where **Paragraph 4. Duties in the Event of Occurrence, Offense, Claim or Suit**  applies and RAILROAD PROTECTIVE LIABILITY COVERAGE FORM where **Parapraph B. 2. Duties in the Event of Occurrence, Offense, Claim or Suit** applies, is amended to add the following:

**e.**    We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

**Paragraph  2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of the PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM is amended to add the following:

**c.**    We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  08/31/2016          Policy No.  GLA4055597          Endorsement No.

Named Insured  FDO HOLDINGS, INC.                                      Premium $  Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

POLICY NUMBER: GLA4055597

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| **Name Of Person Or Organization:** |
| --- |
| As required by written contract or agreement when such written contract or agreement is executed prior to an occurrence, offense or loss to which this endorsement applies.<br><br>Any individually scheduled waivers shall not be construed to override nor negate this blanket waiver. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

IL 02 58 12 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARIZONA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following is added to the **Cancellation Common Policy Condition** (and applies except in situations where **B.,** below, applies):

**7. Cancellation Of Policies In Effect For 60 Days Or More**

If this Policy has been in effect for 60 days or more, or if this Policy is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

**c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this Policy, in continuing this Policy or in presenting a claim under this Policy;

**d.** Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

**e.** Substantial breach of contractual duties or conditions;

**f.** Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

**g.** Determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

**h.** Acts or omissions by you or your representative which materially increase the hazard insured against.

If we cancel this Policy based on one or more of the above reasons, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reason(s) for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any of the other reasons.

© Insurance Services Office, Inc., 2014

**B.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

**1.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

**2.** Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **A.** above) with respect to cancellation of such coverage:

If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

**c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the Policy, continuing the Policy or presenting a claim under the Policy;

**d.** Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

**e.** Substantial change in the risk assumed by us, since the Policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**f.** A determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state; or

**g.** Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this Policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any of the other reasons.

**C.** The following is added and supersedes any provision to the contrary (and applies except in situations where **D.,** below, applies):

**Nonrenewal**

**1.** If we elect not to renew this Policy, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 45 days prior to the expiration of this Policy.

**2.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If either one of the following occurs, we are not required to provide written notice of nonrenewal:

**a.** We or a company within the same insurance group has offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or agreed in writing to do so.

**4.** If written notice of nonrenewal is mailed less than 45 days prior to expiration of this Policy, and neither **3.a.** nor **3.b.** applies, the coverage shall remain in effect until 45 days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date of this Policy shall be considered pro rata based upon the previous year's rate.

**D.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

**1.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

**2.** Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **C.** above) with respect to nonrenewal of such coverage:

**1.** If we elect not to renew, we will mail written notice of nonrenewal to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

 © Insurance Services Office, Inc., 2014

**2.** If either one of the following occurs, we are not required to provide notice of nonrenewal:

    **a.** You have agreed to nonrenewal; or

    **b.** You have accepted replacement coverage.

**3.** If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective conditions.

**E.** The following condition is added:

**Renewal**

**1.** If we elect to renew this Policy and the renewal is subject to any of the following:

    **a.** Increase in premium;

    **b.** Change in deductible;

    **c.** Reduction in limits of insurance; or

    **d.** Substantial reduction in coverage;

we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 30 days before the anniversary or expiration date of the Policy.

**2.** If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 30 days before the anniversary or expiration date of this Policy, the following procedures apply:

    **a.** The present policy will remain in effect until the earlier of the following:

        **(1)** 30 days after the date of mailing or delivery of the notice; or

        **(2)** The effective date of replacement coverage obtained by the first Named Insured.

    **b.** If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

        **(1)** The rates applicable to the terminated policy; or

        **(2)** The rates presently in effect.

    **c.** If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

    © ISO Properties, Inc., 2004

IL 02 70 09 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© Insurance Services Office, Inc., 2012

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2.** **Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© Insurance Services Office, Inc., 2012
**IL 02 70 09 12**

IL 02 28 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

**(1)** Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** A false statement knowingly made by the insured on the application for insurance; or

**(3)** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2006

**D.** The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**1.** Nonpayment of premium;

**2.** A false statement knowingly made by the insured on the application for insurance; or

**3.** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

IL 01 25 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Colorado law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** The individual Named Insured by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of your household, including a ward or foster child.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

 © Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

CG 02 20 03 12

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2014

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

    **a.** Nonpayment of premium, whether payable to us or to our agent;

    **b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

    **c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    **d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

© Insurance Services Office, Inc., 2014

COMMERCIAL GENERAL LIABILITY
CG 02 00 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2006

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2011

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

   **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

   **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

   **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

   **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

   **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

   Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

   The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

 © Insurance Services Office, Inc., 2013

IL 02 77 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

© Insurance Services Office, Inc., 2011

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d., C.5.e.** and **C.5.f.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**f.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a., D.5.b., D.5.c., D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph D.5.d. applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**E.** The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** or **D.** of this endorsement.

**F.** Paragraph **f.** of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph **4.f.** of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

COMMERCIAL GENERAL LIABILITY
CG 32 10 04 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or "bacteria" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or "bacteria" that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or "bacteria" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Bacteria" means any type, kind or form of bacterium.

**2.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 01 25 03 03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1.a.** of **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is replaced with the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**B.** Paragraph **1.a.** of **Section I – Coverages, Coverage B – Personal And Advertising Injury Liability** is replaced with the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

COMMERCIAL GENERAL LIABILITY
CG 01 18 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following.

**Legal Action Against Us**

A person or organization may bring a "suit" against us including, but not limited to, a "suit" to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © ISO Properties, Inc.,  2003

**COMMERCIAL GENERAL LIABILITY**
**CG 26 84 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The **Transfer Of Rights Of Recovery Against Others To Us** Condition **Section IV – Conditions** is replaced by the following:

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization, and the insured will do whatever is necessary to secure such rights. Our right to recover is subordinate to the insured's right to be fully compensated.

**CG 26 84 12 04**                    © ISO Properties, Inc.,  2003                    **Page 1 of 1**

**COMMERCIAL GENERAL LIABILITY**
**CG 02 01 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** When this Policy has been in effect for 45 days or less and is not a renewal policy, we may cancel this Coverage Part by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** 15 days before the effective date of cancellation if we cancel because the risk does not meet our underwriting standards.

**3.** When this Policy has been in effect for more than 45 days or is a renewal policy, we may cancel this Policy by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph **b.,** we may cancel only for one or more of the following reasons:

**(1)** When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

**(2)** A change in the condition of the risk that results in an increase in the hazard insured against.

**(3)** A matter or issue related to the risk that constitutes a threat to public safety.

If we cancel pursuant to Paragraph **3.b.,** you may request additional information on the reason for cancellation within 30 days from the date of our notice.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due.

If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be calculated as follows:

**a. Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

**b. Policies Written For More Than One Year**

**(1)** If the Policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

**(2)** If the Policy is cancelled after the first year, we will refund the pro rata unearned premium.

**c. Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the Policy is cancelled.

We will retain the minimum premium, except if the Policy is cancelled as of the inception date.

However, if this Policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the Policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

**C.** Paragraph **6.** of the **Cancellation** Common Policy Condition is replaced by the following:

**6.** We will send notice of cancellation to the first Named Insured by a "first-class mail tracking method" if:

**a.** We cancel for nonpayment of premium; or

**b.** This Policy is not a renewal of a policy we issued and has been in effect for 45 days or less.

We will send notice to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service if we cancel for a reason other than nonpayment of premium and this Policy:

**a.** Is a renewal of a policy we issued; or

**b.** Has been in effect for more than 45 days.

We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**D.** The following condition is added and supersedes any provisions to the contrary:

**When We Do Not Renew**

**1.** We may elect not to renew this Policy by mailing notice of nonrenewal to the first Named Insured at the last mailing address known to us at least 45 days before the expiration date of this Policy.

**2.** We will send notice of nonrenewal to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**3.** When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

**4.** If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the Policy will terminate on the renewal date for nonpayment of premium.

**E.** The following definition is added:

"First-class mail tracking method" means a method that provides evidence of the date that a piece of first-class mail was accepted for mailing by the United States Postal Service, including a certificate of mail and an electronic mail tracking system used by the United States Postal Service.

"First-class mail tracking method" does not include a certificate of bulk mailing.

© Insurance Services Office, Inc., 2014

**COMMERCIAL GENERAL LIABILITY**
**CG 26 73 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES – PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

Paragraph **b.** of the **Premium Audit Condition Section IV** is replaced by the following:

**Premium Audit**

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is 30 days from the date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

 © ISO Properties, Inc.,  2003

IL 02 51 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following are added to the **Cancellation** Common Policy Condition:

**7.a. Midterm Cancellation**

If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

**(4)** Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

**(5)** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

**(7)** A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

**b. Anniversary Cancellation**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

**B.** The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**2.** We need not provide this notice if:

    **a.** You have accepted replacement coverage;

    **b.** You have requested or agreed to nonrenewal; or

    **c.** This policy is expressly designated as nonrenewable.

**C. Notices**

    **1.** Notice of cancellation or nonrenewal in accordance with **A.** and **B.** above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

    **2.** We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

© ISO Properties, Inc., 2006
**IL 02 51 09 07**

IL 01 15 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** All references to spouse shall include an individual who is in a domestic partnership recognized under Nevada law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2009

IL 02 08 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

**a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for:

**(a)** Nonpayment of premium; or

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

**(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

**(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

© ISO Properties, Inc., 2006

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2006

**e.** We need not send notice of cancellation if you have:

    **(1)** Replaced coverage elsewhere; or

    **(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

    **a.** Certified mail; or

    **b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

    **a.** Replaced coverage elsewhere; or

    **b.** Specifically requested termination.

IL 01 41 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2008

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

IL 02 69 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

**a. Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

**(h)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.

IL 02 44 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

**a.** Nonpayment of premium;

**b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

**c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

**d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

**e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

**f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

**g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

**4.** We will mail the notice of cancellation at least:

**a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

© ISO Properties, Inc., 2006

5. The notice of cancellation will:

   **a.** State the effective date of cancellation. The policy period will end on that date.

   **b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

**C. Common Policy Conditions**

1. Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

2. Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date, if we cancel for any other reason.

 © ISO Properties, Inc., 2006 IL 02 44 09 07

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

 © ISO Properties, Inc., 2006

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

   © ISO Properties, Inc., 2006   **IL 02 46 09 07**

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

**2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

**3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

**4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

**5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

 © Insurance Services Office, Inc., 2013

IL 02 50 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

© ISO Properties, Inc., 2007

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   **a.** We have offered to issue a renewal policy; or

   **b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

© ISO Properties, Inc., 2007

**COMMERCIAL GENERAL LIABILITY**
**CG 01 03 06 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

IL 02 75 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2.** We may cancel this policy:

    **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

 © Insurance Services Office, Inc., 2013

**b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

　**(a)** Fraud in obtaining coverage;

　**(b)** Failure to pay premiums when due;

　**(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

　**(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

　**(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

**(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

　**(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

　**(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

　**(c)** If the Named Insured submits a fraudulent claim; or

　**(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**B.** The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

**a.** The first Named Insured; and

**b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

IL 01 68 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

© Insurance Services Office, Inc., 2011

COMMERCIAL GENERAL LIABILITY
CG 26 39 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

 © ISO Properties, Inc., 2006  □

**COMMERCIAL GENERAL LIABILITY**
**CG 01 86 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties in the Event of Occurrence, Offense, Claim or Suit
Duties in the Event of Occurrence, Claim or Suit
Duties in the Event of Injury, Claim or Suit
Duties in the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties in the Event of a Loss
Duties in the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

**B.** The **Legal Action Against Us** Condition does not apply.

© ISO Properties, Inc., 2003

IL 02 66 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation;

**c.** Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

**d.** Substantial breaches of contractual duties, conditions or warranties.

If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

**8.** With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph **7.** above:

We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

**9.** Notice of cancellation must be delivered or mailed by first-class mail.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

**2.** We need not mail this notice if:

**a.** You have accepted replacement coverage;

**b.** You have requested or agreed to nonrenewal; or

**c.** This policy is expressly designated as nonrenewable.

**3.** If notice is mailed, proof of mailing is sufficient proof of notice.

 © ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY
CG 01 47 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – COMMON-INTEREST ASSOCIATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include the following as an insured:

Each individual unit-owner or each individual lot-owner of the insured association, but only with respect to liability arising out of:

**1.** the unit-owner's or lot-owner's ownership interest in the common elements and facilities;

**2.** the unit-owner's or lot-owner's membership in the association; and

**3.** maintenance, repair, or replacement of common elements and facilities.

**B.** The following paragraph is added to **Section IV – Commercial General Liability Conditions:**

**Acts Or Omissions By Unit-Owners Or Lot-Owners**

No act or omission by any unit-owner or lot-owner, unless acting within the scope of the unit-owner's or lot-owner's authority on behalf of the association, will void the policy or be a condition to recovery under the policy.

**C.** The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us (Section IV – Commercial General Liability Conditions):**

We waive any rights, which the Transfer Of Rights Of Recovery Against Others To Us Condition may give us against:

**a.** any unit-owner or lot-owner; and

**b.** any person residing with the unit-owner or lot-owner, if the unit-owner resides in the unit or lot-owner resides on the lot.

© Insurance Services Office, Inc., 2013

**COMMERCIAL GENERAL LIABILITY**
**CG 01 79 07 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

**CG 01 79 07 10** © Insurance Services Office, Inc., 2010 **Page 1 of 1**

IL 01 38 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

**a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice in accordance with Virginia Law or deliver written notice to the first Named Insured's last mailing address known to us.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this Policy is cancelled:

**(1)** At our request;

**(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** And rewritten by us or a member of our company group; or

**(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this Policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this Policy, we will mail or deliver a notice of nonrenewal to the first Named Insured shown in the Declarations, stating the reason for nonrenewal, at least:

**a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice in accordance with Virginia Law or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2015

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc.,  1998

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

 **b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III – Limits Of Insurance**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

### SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I –** Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

© Insurance Services Office, Inc., 2012

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**